**\*\*E-filed 1/4/12\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, etc.,

    Plaintiff,

  v.

FEDERAL INSURANCE COMPANY

    Defendants.
_____/

No. C 10-3540 RS

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In 2006, the family of three-year-old Leialoha Fotu was attending a relative's graduation party held in two of the ballrooms at the Embassy Suites Hotel in Burlingame, California. The party was catered by an on-site restaurant at the hotel, which had use of the ballrooms under the terms of its lease with the hotel. During the party, Leialoha wandered off, unsupervised. She found her way to a second floor balcony, where she apparently climbed onto the railing via a planter that had been placed next to it. Tragically, Leialoha fell to the floor below, and was killed.

Plaintiff National Fire Insurance Company of Hartford, the restaurant's insurer, paid its $1,000,000 policy limits to the Fotu family to settle their claims against both the restaurant and the hotel. National then filed this action seeking reimbursement of its defense and settlement costs from the hotel's insurer, defendant Federal Insurance Company. The parties have brought cross-motions for summary judgment. Federal's motion will be denied because, at least on this record, its

arguments that it has no liability for contribution fail.  National's cross-motion will also be denied, because its contention that Federal must fully reimburse it for all defense and settlement costs is not tenable, and factual questions exist as to the amount of any contribution Federal may be obligated to provide.

## II.  BACKGROUND

While the backdrop to this action concerns the accidental heartbreaking death of a young child, the issues being litigated here involve only the question of how financial responsibility should be allocated as between two insurers who had issued liability policies arguably implicated by the incident.  As noted, Leialoha was on the hotel premises to attend a relative's graduation party.  The party was catered by a restaurant that operates in the hotel, under a written lease.  While the ballrooms in which the party was held are not part of the leased premises *per se*, the restaurant has the right under the lease to use the ballrooms for catered events.

At some point during the party, Leialoha wandered away, and apparently took an elevator to a second floor balcony, in a part of the hotel that was neither part of the leased premises nor the ballrooms.  She is believed to have climbed onto a planter box adjacent to the balcony railing, and from there onto the railing itself.  She fell approximately eighteen feet to the concrete floor below, suffering fatal injuries.

Leialoha's mother brought a wrongful death action in state court, in which initially only the hotel was named as a defendant ("the Fotu action").  The complaint in the Fotu action was subsequently amended to name the restaurant as well.  The hotel tendered defense of the Fotu action to National, the restaurant's insurer, on the basis that the hotel was an "additional insured" under the restaurant's policy.  National initially declined coverage, with the result that the hotel incurred defense costs for a period of time.  Ultimately, National agreed to provide both the hotel and the restaurant a defense.  The hotel never tendered its defense to Federal, its own insurer.

The Fotu action was mediated, and settled, prior to any significant discovery taking place.[1] National paid its policy limits of $1,000,000 to settle the claims against both the hotel and the

---

[1] National's unopposed motion to file a copy of the settlement agreement under seal (Dkt. No. 39) is granted.

restaurant. The record does not indicate any allocation of that sum as between the potential liability of the hotel and the potential liability of the restaurant.

National then initiated a declaratory relief action in state court against Federal and the Hotel, seeking relief essentially similar to what it seeks here. The hotel brought a cross-complaint against National, contending the initial denial of coverage constituted bad faith, and seeking to recover the costs it had incurred prior to National assuming the defense. The hotel and National settled their competing claims, with a payment of $100,000 from National to the hotel. National and Federal agreed to dismiss the balance of that action, and to attempt to mediate the dispute between them, under a tolling agreement. When mediation failed, National re-filed in this court, on the basis of diversity jurisdiction.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . .

3

Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. Coverage under the National Policy

The initial point of controversy between the parties is whether National had any obligation in the first instance to defend and indemnify the hotel as an "additional insured" under the policy issued to the restaurant. There is no dispute that the lease between the hotel and the restaurant required the latter to obtain coverage for the hotel as an "additional insured" and that the National policy in fact listed the hotel as such. The "additional insured" endorsement to the National policy, however, stated that coverage was extended only, "with respect to liability *arising out of* the ownership, maintenance or use of that specific part of the premises leased to [the restaurant]."

In *Fireman's Fund Ins. Co. v. Discover Property & Cas. Co.*, 2009 WL 2591394 (N.D. Cal. Aug. 21, 2009), the court construed an identical provision and concluded that when a person on her way to attend a signing at a bookstore in a mall tripped and fell over construction materials more

than 800 feet away from the store, the liability did not "arise out of" the bookstore's use of its leased property. *Fireman's Fund* reasoned that even though the injured person would not have been on mall property "but for" the bookstore event, the connection between the fact that she "happened to be walking to the bookstore" and the store's use of its leased premises was "too thin" to support coverage under the policy provision. 2009 WL 2591394 at *4.

The facts here are not as similar as National insists. Leialoha wandered away from a party in progress. Even adults guests not infrequently spill out of the specific confines of such events. While the *Fireman's Fund* decision emphasized the geographical distance between the bookstore and the site of the injury, it also noted that the victim was not even "in line for the book signing," implying that there might have been coverage even if she had been outside the bookstore itself, but in a line for the event. *Id.* Although Leialoha may not have been within the ballrooms where the party was taking place, she was still "at" the party in a more general sense, not merely traveling through some public space on her way to the event.

National also relies on *Hartford v. State of California*, 41 Cal. App. 4th 1564 (1996). In *Hartford*, a child was injured while playing on bleachers some distance away from where his grandparents were setting up an exhibition booth at the state fairgrounds. *Id.* at 1567. The court suggested coverage would have been likely if the child had been injured somewhere around the booth while actually helping to set it up or operate it, but the mere fact that he was on the fairgrounds simply because his grandmother was there to set up the booth was an insufficient basis to characterize the accident as having arisen out of the operations of the booth. *Id.* at 1569. Again, the circumstances here are distinct, because she was on the premises to attend the party herself, and the fact that she wandered beyond the four walls of the room in which it was held did not mean she was no longer "at" or connected to the party in a general sense.

Federal, in turn, relies on *Hartford Casualty Ins. Co. v. Travelers Indemn. Co.*, 110 Cal.App.4th 710 (2003) ("*Hartford Casualty*"), in which an employee was working after hours in an office building. The employee somehow fell to his death from an exterior deck that was not technically part of his employer's leased premises, but to which tenants had access. *Id.* at 713. The landlord qualified as a generic additional insured under the tenant's insurance policy, "but only with

respect to" the tenant's work or operations or facilities. *Id.* at 714. Despite the fact that this language arguably was *narrower* than the more common "arising out of" phrase, *Hartford Casualty* held that the landlord was entitled to coverage as an additional insured. *Id.* at 720. The court explained, "the plain commonsense meaning of [the policy] terms, extended coverage to liabilities potentially imposed on [the landlord] that are related to [the tenant's] business presence in [the landlord's] facilities, as well as specific events occurring during the actual performance of [the tenant's] own work or operations." *Id.* To establish coverage as an additional insured in circumstances like these, only "a minimal causal connection or incidental relationship" between the liability and the tenant's presence in the landlords building need be shown. *Id.* (quoting *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321, 328 (1999)); *see also Fireman's Fund*, 2009 WL 2591394 at *3 (citing *Acceptance*, and explaining that while something more than "but for" causation is required, the connection still need be only "minimal").

Finally, National also argues that the accident cannot be seen as "arising out of" the restaurant's operations because it was the result of the hotel's sole negligence. Given that the underlying Fotu action was settled prior to any significant discovery taking place, the parties dispute whether and how the respective fault of the hotel and the restaurant could be determined now. Even assuming the only negligence was on the part of the hotel, however, that does not preclude coverage under the "additional insured" provision of the National policy.

National relies heavily on *Transcontinental Ins. Co. v. Ins. Co. of the State of Pennsylvania*, 148 Cal. App. 4th 1296 (2007), for the proposition that an "additional insured" is covered only for "derivative risk" not for its own "direct negligence." *Transcontinental*, however, involved claims against a developer for alleged *misrepresentations* made in marketing a construction project. Not surprisingly, the court found no connection between those claims and the work of the subcontractors under whose insurance policies the developer was seeking coverage. *Id.* at 1308. The court, however, endorsed the general proposition that "courts agree the 'arising out of' language used in most endorsements requires only a minimal connection between the liability and the subcontractor's operations to trigger coverage." *Id.* at 1306.

Furthermore, while the hotel here may have had an independent duty to its *own* guests and invitees to ensure that the balcony railing was designed and maintained in a safe condition, its duty *to Leialoha and her mother* arose from the fact that it was reasonably foreseeable that guests at restaurant events would be on portions of the premises outside the confines of the restaurant itself and the ballrooms it was entitled to use. Thus, the hotel's risk was in an important sense "derivative" in any event. Accordingly, the hotel was entitled to coverage under National's policy as an additional insured.

### B. Satisfaction of the "Self-Insured Retention" under the Federal Policy

Federal contends it has no obligation to provide defense or indemnity to the hotel until and unless the hotel expends $250,000 of its *own money* to satisfy the "Self-Insured Retention" ("SIR") provision of the policy. Federal relies on language in its policy that, "[w]e have no obligation or liability under such Coverages unless and until the applicable Self-Insured Retentions as described in the Schedule are exhausted by payments you make . . . . You must pay all self-insured retention expenses." (emphasis added).

Federal relies on *Forecast Homes, Inc. v. Steadfast Ins. Co*., 181 Cal.App.4th 1466 (2010) for the proposition that clear policy language requiring that an insured pay an SIR amount out of its own pocket is enforceable. The policy in *Forecast*, however, had the following additional language, not present here: "Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the self-insured retention." 181 Cal.App.4th at 1472.

Additionally, as National points out, the policy here contains language that, "bankruptcy, insolvency or the financial impairment *of any insurer* or any other person or organization" does not relieve the hotel of its obligation to satisfy the SIR. That language thereby implies that the hotel ordinarily *may* pay the SIR through other insurance. In contrast, a similar provision in *Forecast* referred only to the insured's *own* bankruptcy or insolvency. 181 Cal.App.4th at 1472 ("Satisfaction of the self-insured retention as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you.").

While Federal insists that National's reading of these policy provisions is "strained," the policy does *not* clearly require the hotel to satisfy the SIR out of its own pocket. Accordingly, there is no bar to National's argument that the hotel can be deemed to have satisfied the SIR through the payments made by National on its behalf.[2]

### C. Relationship between Federal and National Policies

Federal contends that even if the hotel can be deemed to have exhausted the SIR, it was still an excess insurer with no obligation to defend or indemnify, pending exhaustion of the National policy coverage limits. While Federal's characterization of the National policy as providing primary coverage appears correct, and while its own policy certainly was "excess" to the SIR, it has not shown that its coverage would necessarily be "excess" to the National policy, once the SIR was satisfied. *See Forecast,* 181 Cal.App.4th at 1474 (quoting Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2008) ¶ 7:387, p. 7A–128, "The analogy between 'primary' and 'excess' insurance should not be carried too far. An SIR is *not* the same as primary insurance for all purposes."); and *cf. Montgomery Ward & Co. v. Imperial Casualty & Indemnity Co*. 81 Cal.App.4th 356, 370 (2000) (holding horizontal exhaustion of SIRs not to be required before excess coverage is triggered). Thus, Federal cannot simply rely on the fact that its policy can be characterized as excess to the SIR to insist that it had no obligation to defend or indemnify until *both* the SIR was satisfied *and* the National policy was exhausted.

While Federal has argued that the "other insurance" provisions of the two policies need never come into play given its characterization of its own policy as excess to the National Policy, its offers those provisions as a final line of defense. In that regard, Federal relies on language in National's policy that it is *not* excess where it has been provided to an additional insured pursuant to

---

[2] Questions nevertheless remain as to when and if the SIR was satisfied. The record does not indicate the dollar amount of costs the hotel incurred in its own defense prior to National's acceptance of the tender. Nor is it clear whether and the extent to which those sums must be offset by the settlement paid to the hotel by National in the state court declaratory relief action. Finally, to the extent the SIR was only fully satisfied (if ever) by the settlement paid in the Fotu action, it is unclear how that payment should be allocated as between the hotel and the restaurant.

8

a written contract or agreement that "specifically requires that this insurance be either primary or noncontributing."[3]  The shortcoming in Federal's position, however, is that it has failed to show that the lease between the restaurant and the hotel contains any requirement implicating that provision. Rather, Federal has pointed only to lease language generally requiring the restaurant to indemnify and hold the hotel harmless, not to any specific terms regarding insurance requirements.  Federal also points to correspondence supposedly reflecting the parties "understanding" that the National policy was primary, but that falls short of a written agreement specifically requiring it to be so. Accordingly, on the present record, the possibility remains that Federal is liable for pro-rata contribution to defense and indemnity costs in excess of the $250,000 SIR.[4]

## V.  CONCLUSION

The motions are denied.  The parties shall appear for a further Case Management Conference on February 9, 2012 at 10:00 a.m., with a joint statement to be submitted one week in advance.  All other previously set dates are hereby vacated.

IT IS SO ORDERED.

Dated: 1/4/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[3]  This language, unique to the National policy, defeats National's argument that the "other insurance" provisions of the two policies simply cancel each other out, leaving both insurers as primary (after satisfaction of the SIR).

[4]  As Federal points out, any obligation it may have had to provide a defense upon satisfaction of the SIR would not be retroactive.  As such, there may very well have been no defense costs incurred to which it must contribute.  Resolution of exactly when any obligation to defend arose, and whether any defense costs were incurred thereafter, must await further proceedings.